1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO HERNANDEZ,<br><br>                              Petitioner,<br><br>        vs.<br><br>TIM VIRGA,  Warden,<br><br>                              Respondent. | Civil No.     12cv1682-BEN (DHB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

Francisco Hernandez ("Petitioner"), a state prisoner proceeding *pro se* filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  (ECF No. 4.)  Petitioner seeks relief from his August 2009 conviction in San Diego County Superior Court Case No. SCE286092 for two counts of robbery.  He is currently serving a 37 years to life sentence in state prison.  Petitioner raises four grounds for relief in his Petition: first, that the trial court improperly failed to order a competency hearing pursuant to California Penal Code § 1368; second, that the failure to *Mirandize* him violated his constitutional rights; third, that the trial court erred in failing to give a jury instruction on competency and intent; and fourth, ineffective assistance of counsel. Respondent filed an Answer opposing any habeas relief (ECF No. 19),[1] and Petitioner

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

filed a Traverse (ECF No. 25) and supplemental memorandum in support of his Traverse (ECF No. 27.) The Court has reviewed the parties' pleadings, the record, and controlling law, and for the reasons discussed below, hereby **RECOMMENDS** the Petition be **DENIED**.

## I.    BACKGROUND

### A.    <u>Factual Background</u>

The following facts are taken from the unpublished California Court of Appeal Opinion in *People v. Hernandez*, Case No. D057059 (Cal. Ct. App. October 27, 2011). (Lodgment No. 7.) The Court presumes these factual determinations are correct pursuant to 28 U.S.C.A. § 2254(e)(1). *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (finding factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

i. The People's Case

On September 27, 2008, at about 8:00 p.m., Abraham Moreno and Humberto Rodriguez were in Balboa Park watching a music video on Moreno's cell phone while seated in Moreno's parked car. Two men approached the car, one on each side. One of the men, who wore a red hat, red shirt and sunglasses, with the letters "SD" tattooed on his face–who Moreno and Rodriguez identified at trial as Ifopo–approached Moreno, who was sitting in the driver's seat, leaned through the open window, and said, "Look, I'm pretty fucked up. We can do this the easy way or the hard way." Ifopo lifted up his shirt, pulled a handgun from his waistband, and held it inside the car in front of Moreno. Ifopo told Moreno and Rodriguez to "give [him] all [their] shit." When Moreno and Rodriguez indicated they did not have anything to give, the man standing on the passenger side of the car–who Moreno and Rodriguez identified at trial as Hernandez–muttered that he was "going to fucking kill somebody." Ifopo then demanded Moreno's and Rodriguez's phones.

Moreno handed his phone, wallet and car keys to Ifopo. Rodriguez gave his phone and iPod to Hernandez but, as he was about to hand over his wallet, he asked Hernandez whether he could keep his identification. In response, Ifopo pointed his gun at Moreno's head and said, "This is your[] bud, right? You better shut the fuck up or I'm going to blow his brains out." Rodriguez told Ifopo and Hernandez to "take everything" and handed his wallet to Hernandez. Ifopo said he would leave the car keys by the bathroom and he would "blow [their] brains out" if they retrieved them before 10 minutes had passed. Moreno and Rodriguez sat in the car as Ifopo and Hernandez walked away.

After a few minutes, Moreno and Rodriguez got out of the car, unsuccessfully looked for the keys, and called 911 using the phone of a

passenger in a nearby limousine.  The recording of the 911 call was played for the jury.

In early October 2008, Detective Manuel Garcia of the San Diego Police Department received a tip regarding a potential suspect with the letters "SD" tattooed on his face.  He showed Moreno and Rodriguez a photographic lineup containing Ifopo's photo.  In the photographic lineup, Detective Garcia covered up Ifopo's tattoo with black ink, and he also put black ink on the right cheeks of the other individuals in the lineup.  Both men identified Ifopo as the man with the gun during the robbery.

The police learned that Hernandez was one of Ifopo's acquaintances.  In November 2008 Detective Garcia prepared a photographic lineup containing Hernandez's photo and later showed the lineup to Moreno and Rodriguez.  Rodriguez identified Hernandez. Moreno indicated to Detective Garcia that he could not recognize the second suspect from a picture, but he would recognize him if he saw him in person.  At trial, Moreno identified Hernandez as the man who had stood by the passenger-side door of the car during the robberies.

On November 20, 2008, Detective Garcia interviewed Hernandez in the county jail regarding his investigation of the robberies.  Detective Garcia showed Hernandez the lineup containing Ifopo's photo and told him Ifopo had been identified as a suspect in a September 2008 robbery case he was investigating.  He then showed Hernandez the lineup containing Hernandez's photo and told Hernandez he had been identified as well.  Hernandez grabbed the photo lineup and stated he did not rob anyone. Hernandez said he knew Ifopo as "Samoan Alex." He also stated that he and Ifopo had once smoked marijuana at a park near the San Diego Zoo, and on that occasion Ifopo had shown him a black replica handgun that Hernandez believed was a pellet gun.  Hernandez told Detective Garcia, "I don't remember robbing anybody."

ii. The Defense Case

Hernandez's cousin, Sylvia Curia, testified that on the night of the robbery Hernandez and his girlfriend, Shannette Kleian, babysat her infant son so she could go to a bar to drink.  On cross-examination, Curia stated that Hernandez took her son at around 5:00 p.m., and she assumed he was at his girlfriend's house babysitting Curia's son after that, but she did not know whether her son remained with Hernandez after 5:00 p.m.  Curia's mother also testified that Hernandez took Curia's son to his girlfriend's house.

Hernandez's girlfriend remembered that she and Hernandez babysat Curia's son at her house in late September 2008.  On cross-examination, she stated she was not sure whether she and Hernandez babysat Curia's son on September 27, 2008 (the night of the robberies).

Dr. Thomas MacSpeiden, a forensic clinical psychologist, testified about numerous factors that can adversely affect the accuracy of an eyewitness identification of a suspect.

Ifopo testified that he was doing "[a] lot of drinking and getting high" in Balboa Park on the night of the robberies.  He denied that he was

1    with Hernandez that night.  Ifopo stated he was with Hernandez in a park
     near downtown on another occasion when he (Ifopo) had a real gun.  Ifopo
2    admitted that on September 27, he walked up to "[t]wo Mexicans" in a car
     with his hand in his pocket, pretending to have a gun, and told them to
3    give him "everything."  He stated he once had a nine-millimeter Glock
     handgun, but he had sold it.  He testified he was "positive" he did not have
4    a gun on the night of the robberies.

5    (Lodgment No. 7 at 3-6.)

6    **B.   Procedural Background**

7         On April 22, 2009, Petitioner was charged in an Amended Information with two

8    counts of robbery under California Penal Code § 211.  (Lodgment No. 1 at 6-11.)  On

9    August 4, 2009, a jury found Petitioner guilty of both counts.  (*Id.* at 374-75.)  The jury

10   found true an allegation that although Petitioner was not personally armed with a

11   firearm at the time of the robberies, he was a principal in the commission of the crimes

12   and was vicariously liable within the meaning of California Penal Code §  12022(a)(1).

13   (*Id.*)  In a bifurcated proceeding, the trial court found true allegations that Petitioner had

14   (1) served a prior prison term within the meaning of § 667.5(b); (2) suffered two prior

15   serious felony convictions within the meaning of § 667(a)(1); and (3) suffered two prior

16   strike convictions within the meaning of § 667(b)-(i), and § 1170.12(a)-(d).  (Lodgment

17   No. 1 at 325; Lodgment No. 2 at 1441-1443.)

18        On December 1, 2009, prior to his sentencing hearing, Petitioner filed a habeas

19   petition in the San Diego Superior Court.  (Lodgment No. 11.)  The Superior Court

20   denied the petition on January 27, 2010.  (Lodgment No. 12.)

21        On March 16, 2010, the trial court sentenced Petitioner under the three strikes

22   law to a prison term of 37 years to life.  (Lodgment No. 1 at 325-26.)  Petitioner

23   appealed. (Lodgment No. 1 at 327; Lodgment No. 6.)  On October 27, 2011, the Court

24   of Appeal affirmed his conviction.  (Lodgment No. 7.)  Thereafter, Petitioner filed a

25   Petition for Review in the California Supreme Court.  (Lodgment No. 9.)  The

26   California Supreme Court denied his petition for review in a silent denial on January

27   11, 2012. (Lodgment No. 10.)

28        While his direct appeal was pending, Petitioner filed a habeas petition in the

California Court of Appeal.  (Lodgment No. 13.)  The Court of Appeal denied the petition on November 6, 2011.  (Lodgment No. 14.)

On March 29, 2012, following the conclusion of his direct appeal, Petitioner filed a habeas petition in the California Supreme Court.  (Lodgment No. 16.)  On April 13, 2012, Petitioner filed a second habeas petition in the California Supreme Court. (Lodgment No. 15.)   Both petitions were summarily denied on June 13, 2012. (Lodgment Nos. 17, 18.)

On July 2, 2012, Petitioner filed a federal Petition for Writ of Habeas Corpus. (ECF No. 1.)  On July 16, 2012, the Court dismissed the Petition without prejudice and with leave to amend because Petitioner failed to satisfy the filing fee requirement or submit adequate proof of his inability to pay the fee, and failed to name a proper respondent. (ECF No. 3.)  On July 26, 2012, Petitioner filed his First Amended Petition for Writ of Habeas Corpus.  (ECF No. 4.)  Petitioner argues (1) he was denied his right to due process when the trial court failed to hold a competency hearing; (2) the trial court erred in admitting his un-*Mirandized* statements; (3) the trial court erred in failing to instruct the jury on competence and intent; and (4) ineffective assistance of counsel. On November 14, 2012, Respondent filed an Answer to the Petition.  (ECF No. 19.) On December 17, 2012, Petitioner filed a Traverse.  (ECF No. 25.)  On February 24, 2013, Petitioner filed a supplemental memorandum in support of his Traverse.  (ECF No. 27.)

## II.   DISCUSSION

### A.   Legal Standards For Federal Habeas Relief

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this Petition.  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to

any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Horning*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches. 28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).

To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-04 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, [federal habeas courts apply the presumption that]

later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), overruled on other grounds by *Andrade,* 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

"A spare order denying a petition without explanation or citation ordinarily ranks as a disposition on the merits." *Walker v. Martin,* 131 S.Ct. 1120, 1124 (2011); *see also Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S.Ct. at 784-85 (*citing Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)); *see also Hunter v. Aispuro*, 982 F.2d 344, 347-348 (9th Cir. 1992) (California Supreme Court's denial of a habeas petition without comment or citation constitutes a decision on the merits).  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

## B.   Evidentiary Hearing

Petitioner did not initially request an evidentiary hearing in the Petition.  However, in his Traverse, Petitioner states he is entitled to an evidentiary hearing.  (ECF Nos. 25 at 6; 27 at 6-7.)  The Court finds that Petitioner has not shown that further factual development is necessary, such that an evidentiary hearing would be warranted.  *See* 28 U.S.C. § 2254(e)(2) (listing exceptions when an evidentiary hearing may be appropriate).  Because the claims in the petition can be resolved by reference to the record, the Court finds an evidentiary hearing is not necessary.  *Schriro v. Landrigan,*

550 U.S. 465, 474 (2007).

## C.   Ground One: Trial Court Failed to Hold a Competency Hearing

In ground one, Petitioner alleges he was denied his right to due process when the trial court failed to hold a hearing pursuant to California Penal Code § 1368 to determine his mental competency.  (ECF No. 4 at 6.)  Petitioner claims the trial court was provided with information, including medical reports and a sentencing motion, that addressed his mental status.  (*Id.*)  Petitioner claims the information showed he had a history of mental illness and fell within the range of mental retardation, which required the trial court to hold a hearing under § 1368.[2]  (*Id.*)  Respondent argues this claim should be denied because there was no evidence Petitioner was incompetent to stand trial and the state court reasonably rejected this claim.  (ECF No. 19 at 11-13.)  For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented this claim to the California Supreme Court in his habeas petitions.  (Lodgment Nos. 15, 16.)  The California Supreme Court summarily denied his petitions without citation of authority or analysis.  (Lodgment Nos. 17, 18.)  Petitioner did not raise this claim in the Superior Court or the Court of Appeal. Therefore, there is no reasoned state court decision to which this Court can look through to.  Accordingly, the Court must conduct an independent review of the record to determine whether the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law.  *See Delgado,* 223 F.3d at 982.

Due process is violated by the conviction of a person who is legally incompetent to stand trial.  *Pate v. Robinson*, 383 U.S. 375, 378 (1966).  "The failure to observe

---

[2] California Penal Code § 1368 provides in relevant part:

> If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent . . . If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing.

procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975).  The standard for determining competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Pate v. Robinson*, 383 U.S. 375, 388 (1966); *Dusky v. United States*, 362 U.S. 402 (1960); *Torres v. Prunty*, 223 F.3d 1103, 1106-07 (9th Cir. 2000).  "[W]here the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the trial judge on his own motion . . . must conduct a hearing to determine competency to stand trial." *Torres*, 223 F.3d at 1106-07 (citing *Drope*, 420 U.S. at 172-73; *Pate*, 383 U.S. at 385.).  Factors courts consider in ascertaining whether a competency hearing is required include evidence of the defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence. *Drope*, 420 U.S. at 180; *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993).  When determining whether a defendant's due process rights were violated, "[t]he question to be asked by the reviewing court is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Mendez v. Knowles*, 556 F.3d 757, 771 (9th Cir. 2009).

Here, Petitioner did not raise the issue of his competence prior to, or during trial.  In fact, a competency hearing was not specifically requested at any time.  However, Petitioner's mental status was addressed during sentencing.  Petitioner's counsel filed a Romero motion requesting the court strike one of his prior strike convictions under the three strikes law.  (Lodgment No. 1 at 282-288.)  In support of that request, the motion provided information about Petitioner's background, including that Petitioner had a history of mental illness, drug addiction, and had been tested and found to be in the low to borderline range of intellectual ability.  (*Id.* at 285-288.)  The motion did not, however, argue that Petitioner was incompetent.

Further, reviewing the record, the Court finds there is no evidence that Petitioner exhibited irrational behavior, or that his demeanor at trial or other court appearances suggested he was incompetent.  For example, Petitioner testified at the hearing on his motion to suppress statements. (Lodgment No. 2 at 229-46.)  Petitioner was examined on direct and cross examination. (*Id.*)  The transcript from the hearing does not show that Petitioner was confused or incapacitated at any point.  (*Id.*)  Rather, it appears Petitioner understood the proceeding and testified in a meaningful way.

Petitioner also did not provide a prior medical opinion on his competence.  The Court notes that Petitioner was evaluated by Dr. Meredith Friedman, Ph.D., a licensed clinical psychologist, prior to his sentencing hearing.  (Lodgment No.1 at 260-74.)  However, it does not appear Dr. Friedman believed Petitioner was incompetent.  Dr. Friedman indicated Petitioner was addicted to drugs and his intellectual functioning was in the borderline mentally retarded range.  (*Id.* at 287-88.)  However, she also found Petitioner had a sincere recognition of the gravity of his behavior.  (*Id.* at 288.)  Notably, Dr. Friedman did not opine that Petitioner was unable to consult with counsel or comprehend the proceedings.

Finally, nothing suggests Petitioner was unable to consult with counsel or understand the proceedings.  The prosecutor noted he had dealt with Petitioner for over a year and Petitioner had always been respectful to the Court in every hearing. (Lodgment No. 2 at 1448.)  Also, Petitioner was able to draft and file documents including a habeas petition prior to his sentencing hearing (Lodgment No. 11.), a pro se motion for new counsel (Lodgment No. 5), and a pro se motion for co-counsel. (Lodgment No. 8.).

Having reviewed the record, including the transcripts from the pretrial motion hearing, the trial, and sentencing hearing, the Court finds nothing suggests that the trial court should have doubted Petitioner's competency.  Thus, the trial court had no duty to order a competency hearing. Therefore, the California Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established

federal law.  Accordingly, the Court recommends that Petitioner's claim in ground one be **DENIED**.

### D.   Ground Two:  Trial Court Erred in Failing to Suppress Un-Mirandized Statements

In ground two, Petitioner alleges that his Fifth Amendment rights were violated when he was interviewed without *Miranda* warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  (ECF No. 4 at 7.)  Petitioner claims he was in custody for purposes of *Miranda* when he was interviewed by Detective Garcia at the San Diego County jail.  (*Id.*)  Petitioner argues that because Detective Garcia did not read him his *Miranda* rights, his statements should have been suppressed.  (*Id.*)  Respondent counters that this claim should be denied because the state courts reasonably rejected this claim.  (ECF No. 19 at 13-17.)   For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented this claim to the California Supreme Court on direct appeal.  (Lodgment No. 9.)  The court denied his claim without comment.  (Lodgment No. 10.)  Accordingly, the Court will look through the silent denial to the Court of Appeal's October 27, 2011 opinion.  *Ylst*, 501 U.S. at 804.  The Court of Appeal rejected Petitioner's claim, applying federal and state case law.  (Lodgment No. 7.)  The Court of Appeal analyzed the facts under the four-factor test set forth in *Cervantes v. Walker*, 589 F.2d 424, 427-28 (9th Cir. 1978), and concluded that under the totality of the circumstances, Petitioner was not in custody for *Miranda* purposes.  (*Id.* at 20-24.)  Therefore, the Court of Appeal held the trial court did not err in denying Petitioner's motion to suppress.  (*Id.* at 25.)  Specifically, the Court stated:

> Here, since Hernandez was not free to leave the detention facility entirely, we analyze the facts in light of the four *Cervantes* factors this court adopted in *Macklem* to determine whether some additional degree of restraint was imposed upon him that forced him to participate in the interview.  (See *Macklem, supra,* 149 Cal.App.4th at pp.695-696.)
>
> Regarding the first *Cervantes* factor, the language used to summon the inmate for questioning, the record shows Hernandez was summoned to the visiting room through the loudspeaker when someone announced,

"Hernandez, you have a professional visit." When Hernandez entered the room, Detective Garcia, who was dressed in civilian clothes, identified himself, showed Hernandez his badge, and told Hernandez he was investigating a robbery that occurred in Balboa Park in September 2008. Detective Garcia made no threats and said nothing to suggest he absolutely had to speak with Hernandez during the interview. We conclude there is no evidence the language summoning Hernandez to the visiting room was coercive.

Regarding the second *Cervantes* factor, the physical surroundings of the questioning, Detective Garcia described the visiting room as an area where family, defense attorneys, and law enforcement commonly meet with inmates. He testified the room contained three booths where visitors speak with inmates, and in each booth bars separate the inmate's area from the visitor's area. Detective Garcia explained that although the doors behind Hernandez and him were locked, Hernandez could knock on his door to summon a guard and tell him he was done.

Hernandez gave similar testimony, indicating he and the visitor would be on opposite side of the bars, and although the door would be locked behind him, there was a buzzer he could push to let the deputies know he was done if he did not want to talk to the visitor. Acknowledging he was in custody at the jail for a parole violation, Hernandez indicated he previously had been interviewed in the visiting room by attorneys, investigators and police officers while in custody. The record shows he was not handcuffed when he entered the room, and he remained uncuffed during the interview. When asked during the hearing on his suppression motion whether he went to the visiting room "freely," Hernandez stated, "Yes."

These facts relating to the physical surroundings where the interview took place weigh against any finding of coerciveness because Hernandez acknowledged he freely participated in the interview and knew he would be taken out of the visiting room at his request. In this regard, we note that "an interview room where attorneys and [family] visit . . . inmates is as close to neutral territory as is available in the detention facility." (*Macklem, supra,* 149 Cal.App.4th at p.696.)

With respect to the third *Cervantes* factor, the extent to which the inmate was confronted with evidence of his guilt, the record shows that in the course of explaining why he was interviewing Hernandez, Detective Garcia confronted him with some evidence of his guilt. Specifically, after Detective Garcia identified himself and told Hernandez he was investigating an armed robbery in Balboa Park, he showed Hernandez a photo lineup containing a photo of Ifopo and informed Hernandez that Ifopo had been identified as a suspect. Detective Garcia then showed Hernandez a photo lineup containing Hernandez's photo, told him the victim had identified him, and explained that he was there to hear Hernandez's side of the story. Before Detective Garcia attempted to advise Hernandez of his *Miranda* rights, Hernandez grabbed the lineup containing his photo, looked at it, and made statements that Detective Garcia described as "sudden" and "spontaneous." Hernandez stated he "didn't rob anybody," and he knew Ifopo as "Samoan Alex," and he remembered one time when the two of them were at a park near the zoo smoking marijuana and Ifopo showed him what Hernandez believed was

a black pellet gun.  In his testimony, Detective Garcia stated he did not interrupt Hernandez and, when Hernandez was done, he attempted to advise Hernandez of his *Miranda* rights, as Hernandez acknowledged during his testimony.  Hernandez, however, immediately ended the interview, telling Detective Garcia, "You ain't going to read me no rights. I ain't even going to talk about this no more."  Detective Garcia testified that Hernandez knocked on the door and a deputy arrived 30 to 60 seconds later to retrieve him.  According to Detective Garcia, Hernandez "didn't give [him] a chance to *Mirandize* him."

With respect to the fourth *Cervantes* factor, whether any additional pressure was exerted to detain the inmate, the forgoing circumstances do not disclose that any additional pressure was exerted to detain Hernandez and coerce him into participating in the interview.  Hernandez was given the opportunity to leave the visiting room at any time during the interview.

We conclude under the totality of the circumstances that Hernandez was not in custody for *Miranda* purposes during his jailhouse interview, the protections of *Miranda* thus did not apply, and the fact he made spontaneous statements before Detective Garcia attempted to give a *Miranda* warning did not make those statements inadmissible.

. . .

For all the foregoing reasons, we conclude the court did not err in denying Hernandez's suppression motion.

(Lodgment No. 7 at 20-25.)

Clearly established Supreme Court law provides that *Miranda* warnings are required for a person questioned by police after being "taken into custody or otherwise deprived of his freedom in any significant way." *Miranda*, 384 U.S. at 444.  The ultimate inquiry into whether custody has attached "is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983).)  The fact that a person is detained a jail facility does not necessarily make questioning of that person a custodial interrogation for purposes of *Miranda*. *Beheler*, 462 U.S. at 1125; *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012); *Cervantes v. Walker*, 589 F.2d 424, 427-28 (9th Cir. 1978).  Instead the totality of the circumstances of each case must be examined. *Howes*, 132 S.Ct. at 1189; *Yarborough v. Alvarado*, 541 U.S. 652, 661-62 (2004).  Because the Supreme Court's test for determining custody is a general standard, the range of reasonable judgment by

a state court on this issue is broad. *Yarborough*, 541 U.S. at 663-64.

In *Thompson v. Keohane*, 516 U.S. 99, 112 (1995), the Supreme Court explained that the custody determination for *Miranda* purposes requires two inquiries. First, the state court must determine what the circumstances surrounding the interrogation were. *Id.* at 112. That is a factual inquiry, entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Id.* Second, given those circumstances, the court must determine whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. *Id.* at 112-13. This second inquiry calls for an application of the controlling legal standard to the historical facts and presents a mixed question of law and fact qualifying for independent review by the habeas court. *Id.* at 102 (stating "state court determinations as to whether suspect was 'in custody' at time of interrogation for purposes of *Miranda* is not entitled statutory presumption of correctness during federal habeas corpus review"). In a prison context, the following factors are relevant to determine whether a reasonable person would believe that there had been a restriction of his freedom over and above that in his normal prisoner setting:

> [1] the language used to summon the individual, [2] the physical surroundings of the interrogation, [3] the extent to which he is confronted with evidence of his guilt, and [4] the additional pressure exerted to detain him.

*Cervantes*, 589 F.2d at 428. *See also Howes*, 132 S. Ct. at 1192 ("When a prisoner is questioned, the determination of custody should focus on all the features of the interrogation. These include the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted.").

Although Petitioner alleges he should have been given *Miranda* warnings, he does not challenge the state court's factual findings of the circumstances surrounding the interrogation. Accordingly, this Court presumes those findings are correct pursuant to 28 U.S.C. § 2254(e)(1). Next, considering the factors set forth in *Cervantes*, the Court concludes that the California Court of Appeal's determination that Petitioner was not in custody, was not an unreasonable application of clearly established law.

Petitioner was in custody at the county jail for a parole violation when he was interviewed by Detective Garcia on November 20, 2008. (Lodgment No. 7 at 5, 7.) As to the first factor, Petitioner was notified by a loud speaker, "Hernandez, you have a professional visit." (Lodgment No. 7 at 10.) Petitioner went freely to the visitor room. (*Id.* at 11.) Detective Garcia was dressed in civilian clothes, identified himself, and indicated that he was investigating a robbery that had occurred in Balboa Park. (*Id.* at 20.)

As to the second factor, the interview took place in a visitor room, where inmates can meet with family, attorneys, investigators, and police officers. (Lodgment No. 7 at 10.) The room contains three booths, and the inmate's area is separated from the visitor's area by bars. (*Id.* at 20.) The visitor room is locked. (*Id.* at 10.) However, if an inmate does not want to talk to the visitor, he can push a buzzer to let the guard know he is done. (*Id.*) Petitioner was familiar with the visitor room, and had previously been interviewed there while he was in custody. (*Id.* at 10.)

As to the third factor, after Detective Garcia introduced himself to Petitioner, he did confront Petitioner with some evidence of his guilt. Detective Garcia showed Petitioner the photo lineup that contained Ifopo's picture. (*Id.* at 8.) Then he showed Petitioner the photo lineup that contained Petitioner's photo. (*Id.*) Detective Garcia told Petitioner he had been identified by the victim, and said he was there to get Petitioner's side of the story. (*Id.* at 9.) Petitioner testified at the suppression hearing that he viewed Detective Garcia's statement as an accusation. (*Id.* at 10.) After Petitioner looked at the lineup he stated "I didn't rob anyone." (*Id.*) He also indicated he knew Ifopo as "Samoan Alex", and remembered smoking marijuana at Balboa Park with him once and Ifopo showed him a black pellet gun. (*Id.*) Detective Garcia attempted to *Mirandize* Petitioner, but Petitioner stood up and said he did not want to talk to the Detective anymore. (*Id.* at 8-9.)

Regarding the fourth factor, Petitioner was not restrained or handcuffed. (*Id.* at 21.) The interview lasted approximately 8 to 12 minutes. (*Id.* at 9.) Petitioner knew

15

he could summon the guard at any time if he wanted to leave. (*Id.* at 11.)  When Petitioner decided he didn't want to talk to Detective Garcia anymore, he got up and knocked on his door. (*Id.* at 9.)  Approximately 30 to 60 seconds later, a deputy came and removed Petitioner from the room. (*Id.*)

Although there are some facts that suggest Petitioner was in custody during the interview, the state court weighed the factors and determined that under the totality of the circumstances, Petitioner was not in custody for purposes of *Miranda*.  The Court finds the state court's weighing of the factors and application of clearly established federal law was reasonable. *See Yarborough,* 541 U.S. at 664-65 (recognizing that the custody test is a general one, which gives state courts more leeway in reaching case-by-case results); *Stanley v. Schriro*, 593 F.3d 612, 618-19 (9th Cir. 2010) (citing *Yarborough* and denying habeas relief because "the state court delineated and weighted factors comparable to those the Supreme Court has considered"); *see, e.g. Beheler,* 463 U.S. at 1125 (concluding that the defendant was not "in custody" even though the police suspected him of the crime and the interview took place at the police station); *Mathiason*, 429 U.S. at 495 (finding no indication that the questioning took place in a context where the suspect's freedom to leave was restricted in any way even though the police interviewed the suspect at the police station and indicated they suspected he was involved in the burglary).

After considering the totality of the circumstances, the Court finds the Court of Appeal's determination that Petitioner was not in custody for purposes of *Miranda* was not contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d).  Accordingly, the Court recommends that Petitioner's claim in ground two be **DENIED**.

/ / /

/ / /

/ / /

/ / /

**E**.     **Ground Three: Trial Court Failed to Instruct the Jury on Competence and Intent**

In ground three, Petitioner alleges his due process rights were violated when the trial court failed to instruct the jury on competence and intent.  (ECF No. 4 at 8.) Respondent argues the trial court properly declined to instruct the jury on competence and that the jury was, in fact, instructed on intent.  (ECF No. 19 at 12.)  The Court agrees with Respondent.

Petitioner contends he was denied a fair trial and his right to due process because the trial court failed to instruct the jury on competence.  (ECF No. 4 at 4.)  Petitioner did not raise this claim in the lower courts, but did present it in his Petition for Writ of Habeas Corpus to the California Supreme Court, which the Court summarily denied. (Lodgment Nos. 16 and 17.)  Because there is no reasoned state court decision to which this Court can look through to, the Court must independently review the record to determine if the California Supreme Court's rejection of this claim was objectively reasonable.  *See Delgado*, 222 F.3d at 982.

A petitioner can obtain federal habeas relief on a jury instruction claim if he can demonstrate that the instructional error "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*citing Cupp v. Naughten*, 414 U.S. 141, 147 (1983).  If a federal habeas court determines that the trial court erred in instructing the jury, it must also determine whether the error prejudiced the defendant.  *See Henderson v. Kibbe*, 431 U.S. 145, 153-54 (1977).  A challenged instruction must not be viewed in isolation; instead, it must be considered "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147).

A petitioner challenging a trial court's failure to give a jury instruction has a much heavier burden than one challenging an erroneous instruction that was given. *Henderson*, 431 U.S. at 155.  "An omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.*  To determine whether a defendant

1    was prejudiced by the omission of a jury instruction, the Court must look at the

2    adequacy of the instructions that were actually given. *Id.* at 154, 156.

3         As the Court previously explained, the record does not show that Petitioner's

4    competency was at issue during the trial. Indeed, Petitioner did not raise incompetency

5    as a defense. (Lodgment No. 2 at 1352-79). Therefore, there was no reason for the trial

6    court to instruct the jury on competency. Because Petitioner's competence was not at

7    issue, the Court finds the failure to give a competency instruction did not render the trial

8    so fundamentally unfair as to violate federal due process. *Cupp v. Naughten,* 414 U.S.

9    147 (1973).

10        Petitioner also contends he was denied a fair trial and his right to due process as

11   a result of the trial court's failure to instruct the jury on intent.[3] This claim is refuted by

12   the record. The jury was instructed on intent. Specifically, the following written

13   instruction was given:

14            The defendants are charged in Counts One and Two with robbery.
         To prove that the defendant is guilty of this crime, the People must prove
15       that: . . . 5. When the defendant used force or fear to take the property, he
         intended to deprive the owner of it permanently or to remove it from the
16       owner's possession for so extended a period of time that the owner would
         be deprived of a major portion of the value or enjoyment of the property.

17

18            The defendant's intent to take the property must have been formed
         before or during the time he used force or fear. If the defendant did not
19       form this required intent until after using the force or fear, then he did not
         commit robbery.

20

---

21       [3] The Court notes that on direct appeal, Petitioner argued the trial court failed to instruct the
     jury on the element of knowledge for the firearm enhancement. (Lodgment No. 3.) It does not appear
22   that Petitioner is raising that argument here. However, to the extent he is, the Court finds that he is
     not entitled to relief. The Court of Appeal rejected Petitioner's argument on the ground that under
23   California law, the firearm enhancement does not have a scienter requirement. *See People v. Overton*
     (1994) 28 Cal.App.4th 1497, 1500 ("there is no scienter requirement for an aider or abettor to be found
24   vicariously armed with a firearm under section 12022[(a)(1)]"). Therefore, the Court of Appeal found
     the trial court had no duty to instruct the jury on knowledge regarding the firearm enhancement.
25   (Lodgment No. 7 at 27.) The state court's determination of state law issues cannot be reviewed by
     a federal habeas court. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a
26   federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, to
     the extent Petitioner's claim rests on the Court of Appeal's decision regarding the intent instruction
27   for the firearm enhancement, he has not presented a cognizable federal claim. Moreover, Petitioner
     has not demonstrated that the Court of Appeal's decision is contrary to, or an unreasonable application
28   of, clearly established federal law.

(Lodgment No 1. at 125.)

In addition, the trial Judge verbally instructed the jury as follows:

> The People must prove not only that the defendant did the acts charged, but also that he acted with a particular intent. The instruction for each crime and allegation explains the intent required, and intent may be proved by circumstantial evidence.
>
> . . .
>
> The following allegations require general criminal intent: . . . vicarious arming as charged in Counts 1 and 2 against defendant Hernandez.
>
> For you to find the allegations true, the person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he intentionally does a prohibited act on purpose. However, it is not required that he intends to break the law. The act required is explained in the instructions for that crime or allegation.
>
> The following crimes require specific intent: robbery as charged in Counts 1 and 2. . . . Aiding and abetting also requires specific intent. For you to finds a person guilty of these crimes, that person must not only intentionally commit the prohibited act but must do so with the specific intent. The act and specific intent required are explained in the instruction for that crime.

(Lodgment No. 2 at 1313, 1315-16.)

The trial court also provided jury instructions on Circumstantial Evidence: Intent; Union of Act and Intent: General and Specific Intent Together; and Aiding and Abetting: Intended Crimes. (*See* Lodgment No. 1 at 100, 103, 124.)

Because there was no evidence that Petitioner's competency was at issue during the trial, and because the trial court in fact instructed the jury on intent, the Court finds the California Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court recommends that Petitioner's claim in ground three be **DENIED**.

### F.   Ground Four:  Ineffective Assistance of Counsel

In ground four, Petitioner claims his trial counsel was ineffective. (ECF No. 4 at 9.)   He alleges five instances of deficient performance: (1) counsel allowed a prejudicial lineup to be introduced into evidence; (2) counsel allowed the *Miranda* issue to stand; (3) counsel allowed statements of guilt into evidence; (4) counsel failed to file

a motion regarding Petitioner's competency; and (5) counsel failed to act as an advocate during sentencing. (*Id.* at 9.)  Respondent counters that the state court properly rejected Petitioner's claim because he failed to establish either prong of the *Strickland* test for ineffective assistance of counsel.  (ECF No. 19 at 18-21.)  For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented his ineffective assistance of appellate counsel claim to the California Supreme Court in his Habeas Petition, and it was denied without comment. (Lodgment Nos. 15 and 18.)  Because Petitioner did not raise this claim in the lower courts, there is no reasoned state court decision to which this Court can look through to.  Therefore, the Court must independently review the record to determine if the California Supreme Court's rejection of this claim was objectively reasonable.  *See Delgado*, 223 F.3d at 982.

The clearly established United States Supreme Court precedent governing ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States").  Under *Strickland*, Petitioner must show both incompetence of counsel and prejudice in order to justify issuance of the writ.  *Strickland*, 466 U.S. at 688.  However, the court need not address both prongs if the petitioner fails to make a sufficient showing of either one.  *Id.* at 697.

A petitioner can establish incompetency by showing counsel's performance fell below an objective standard of reasonableness.  *Id.* at 688.  However, judicial scrutiny of counsel's performance should be highly deferential.  *Id.* at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Id.* at 686-87.  A petitioner can establish prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694. *See*

*also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

"Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (reversing a Ninth Circuit en banc grant of habeas relief on an ineffective assistance claim for lack of sufficient deference to the state court result). "[T]he question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id. See also Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) ("We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'") (citation omitted). The petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

### 1. Ineffective Assistance of Counsel for Allowing Lineup to be Introduced Into Evidence

First, Petitioner claims that his trial counsel provided ineffective assistance by failing to suppress a suggestive and prejudicial photographic lineup. (ECF No. 4 at 9.) This argument fails because defense counsel did, in fact, move to suppress the lineup.

On July 20, 2009, Petitioner's counsel filed a Motion in Limine to Suppress Identification Evidence, urging the court to suppress both the out-of-court identification of Petitioner as the perpetrator of the crime, as well as any subsequent in-court identifications of Petitioner as the perpetrator of the crime. (Lodgment No. 1 at 49-55.) The motion contended the witness's identification of Petitioner at a pretrial confrontation was unnecessarily suggestive and conducive to irreparable mistaken identification. (*Id.*) Petitioner's counsel also argued the motion before the trial court. (Lodgment No. 2 at 253-65.) The trial court denied the motion. (*Id.* at 265.)

The fact that an attorney loses an argument is not an indicator of overall poor performance. In our adversarial legal system, which by definition results in a winner and a loser, a loss does not necessarily equate with incompetence of counsel. Here,

Petitioner's counsel presented the trial court with a well-reasoned motion, and zealously argued the motion before the Court.  The fact that the motion was ultimately denied does not mean counsel provided ineffective assistance.  Petitioner, therefore, fails to show that his attorney's conduct fell below an objective standard of reasonableness. Further, because counsel did raise the argument and it was rejected, Petitioner cannot satisfy the prejudice prong, which requires Petitioner to show there is a reasonable probability that the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694

Based on an independent review of the record, the Court finds the California Supreme Court's denial of this claim was not contrary to, or an unreasonable application of, clearly established Federal law.  Accordingly, the Court recommends that Petitioner's claim in ground four based on the photographic lineup be **DENIED**.

## 2.   Ineffective Assistance of Counsel For Allowing *Miranda* Issue to Stand

Second, Petitioner alleges his trial counsel was ineffective because he allowed the *Miranda* issue to stand.  (ECF No. 4 at 9.)  Petitioner's claim is not supported by the record.  On July 20, 2009, Petitioner's counsel filed a Motion in Limine to Suppress Defendant's Custodial Statements, requesting the court prohibit the prosecution from mentioning any of the statements Petitioner made to Detective Garcia while he was in custody.  (Lodgment No. 1 at 56-62.)  At the suppression hearing, Petitioner's counsel vigorously cross-examined the prosecution's witness, Detective Garcia, and called Petitioner to testify.  (Lodgment No. 2 at 215-246.)  Counsel also argued the motion before the court.  (*Id.* at 247-48.)  The court denied the motion in part, and granted it in part.  (*Id.* at 251-52.)  Specifically, the court held Petitioner's statements to Detective Garcia were admissible up until the detective asked Petitioner where he was on the date in question.  The court found that from that point on, any statements Petitioner made should be suppressed.  (*Id.* at 252.)

It appears Petitioner's counsel did all that he could reasonably be expected to do

to try and suppress Petitioner's statements.  As explained above, competence does not require an attorney to win every argument.  Therefore, Petitioner has not shown that his attorney's conduct fell below an objective standard of reasonableness simply because he did not prevail on the motion to suppress statements.  Nor can Petitioner show that he was prejudiced under *Strickland*.

Based on an independent review of the record, the Court finds the California Supreme Court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, the Court recommends that Petitioner's claim in ground four regarding the *Miranda* statements be **DENIED**.

### 3.   Ineffective Assistance of Counsel For Failure to Suppress Petitioner's Statements of Guilt

Third, Petitioner alleges his trial counsel was ineffective for allowing Petitioner's statements of guilt into evidence.  (ECF No. 4 at 9.)  This claim is the same as Petitioner's claim of ineffective assistance based on allowing the *Miranda* issue to stand.  As already explained, Petitioner's counsel attempted to prevent the admission of Petitioner's statements by filing and arguing a motion to suppress statements.  (Lodgment No. 1 at 56-62; Lodgment No. 2 at 215-248.)  The fact that the court denied the motion does not amount to incompetence on the part of defense counsel.  Petitioner has not shown that his counsel's performance was otherwise deficient or that he was prejudiced under *Strickland*.

Based on an independent review of the record, the Court finds the California Supreme Court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law.  Accordingly, the Court recommends that Petitioner's claim in ground four regarding Petitioner's statements of guilt be **DENIED**.

### 4.   Ineffective Assistance of Counsel for Failing to File a Motion Regarding Petitioner's Competency

Fourth, Petitioner alleges his trial counsel was ineffective for filing a Romero motion prior to his sentencing, which contained information regarding Petitioner's

mental capacity.  (ECF No. 4 at 9.)  It appears Petitioner is arguing counsel should have filed a motion regarding Petitioner's competency earlier in the proceedings.  As previously addressed regarding Petitioner's claim that the trial court failed to hold a competency hearing, there was no evidence that Petitioner was incompetent during the proceedings.  Because there was no evidence to create a doubt about Petitioner's competency, counsel was not ineffective for failing to file an earlier motion regarding Petitioner's competency.  *United States v. Shah,* 878 F.2d 1156, 1162 (9th Cir. 1989) (counsel is not ineffective for failing to raise a meritless legal argument).

Based on an independent review of the record, the Court finds the California Supreme Court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly,  the Court recommends that Petitioner's claim in ground four regarding Petitioner's competency be **DENIED.**

## 5.    <u>Ineffective Assistance of Counsel For Failing to Act as an Advocate During Sentencing</u>

Finally, Petitioner alleges ineffective assistance on the ground that his counsel failed to act as an advocate during sentencing.  (ECF No. 4 at 9.)  Again, Petitioner's claim is belied by the record.  Trial counsel sought and obtained a mental evaluation by Dr. Friedman prior to sentencing, filed a Romero motion urging the court to strike one of Petitioner's prior strike convictions, presented the court with three personal reference letters, and argued for a lesser sentence based on Petitioner's mental condition and drug addiction.  (Lodgment No. 1 at 260-74, 282-88, 289-92, Lodgment No. 2 at 1445-46.) Petitioner complains that the Romero motion was mistitled and that his counsel did not make sure the court read the motion.  (ECF No. 27 at 6.)  However, a review of the motion shows that it was properly titled, as counsel was specifically requesting relief from the court  pursuant to *People v. Superior Court (Romero)*, 13 Cal.4th 497 (1996). (Lodgment No. 1 at 282.)  Petitioner's speculation that the court didn't read the motion is not supported by the record.  (*See* Transcript from March 16, 2010 Sentencing Hearing, Lodgment No. 2 at 1444 ("I've read the motion to strike the prior with all the

letters that are attached.")) Although the court denied the Romero motion, and imposed a hefty sentence under the three strikes law, counsel nonetheless met his obligation to defend Petitioner at the sentencing.  Petitioner has not shown that his counsel's performance was deficient or that he was prejudiced under *Strickland*.

Based on an independent review of the record, the Court finds the California Supreme Court's denial of this claim was not contrary to, or an unreasonable application of, clearly established Federal law.  Accordingly, the Court recommends that Petitioner's claim in ground four regarding sentencing be **DENIED.**

## III.  CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Roger T. Benitez under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For all the foregoing reasons, **IT IS RECOMMENDED** this habeas Petition be **DENIED** on the grounds that Petitioner is not in custody in violation of any federal right.  **IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **May 29, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than fourteen (14) days from service of Petitioner's filed Objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:  April 29, 2013

DAVID H. BARTICK
United States Magistrate Judge