FILED

13 OCT 15 PM 1:05

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO HERNANDEZ,<br><br>                          Petitioner,<br><br>vs.<br><br>TIM VIRGA, Warden,<br><br>                         Respondent. | Civil No. 12-CV-1682 BEN (DHB)<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION OVER OBJECTION**<br><br>**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Docket No. 28] |

      Francisco Hernandez, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C § 2254, seeking relief from his August 2009 conviction in San Diego County Superior Court for two counts of robbery. (Docket No. 1.) Magistrate Judge David H. Bartick issued a Report and Recommendation recommending that Hernandez's petition for Writ of Habeas Corpus be denied. (Docket No. 28.) Hernandez filed an Objection to the Report and Recommendation. (Docket No. 29.)

      A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter. FED. R. CIV. P. 72(b)(3). The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* Hernandez raises two objections to the Report and Recommendation:

(1) his un-*Mirandized* statements should not have been admitted as evidence in trial; (2) his right against compelled self-incrimination was violated. Having reviewed the matter de novo and for the reasons that follow, the Report is **ADOPTED** and the petition is **DENIED**.

## BACKGROUND

On September 27, 2008, around 8:00 p.m., victims Abraham Moreno and Humberto Rodriguez were sitting in a parked car located in Balboa Park. They were watching a music video on Moreno's cell phone. Two men, "Ifopo" and "Hernandez", approached the car. Ifopo approached the driver and said "Look, I'm pretty fucked up" right now. "We can do this the easy way or the hard way." He then lifted up his shirt and grabbed a handgun from his waistband. Ifopo demanded that they give him all of their belongings. When the victims explained they had nothing to give, Ifopo stated he was "going to [] kill somebody." One of the victims handed over the car keys, wallet, and phone to Ifopo, while the other handed over his phone, iPod, and wallet to Hernandez.

After Ifopo and Hernandez left the scene, the two victims called 911 using the telephone of a passenger in a nearby limousine. After the victims identified Ifopo, police learned that Hernandez was one of Ifopo's acquaintances. Hernandez's picture was put in a photographic line up. One of the victims identified him in the photographic line up. The other could not and explained that he would recognize him if he saw him in person. Later, at trial, he was able to identify Hernandez as the other person who participated in the robberies.

On November 20, 2008, Detective Manuel Garcia conducted an interview with Hernandez at the county jail. The purpose of the interview was to investigate the robberies. Detective Garcia explained to Hernandez that both he and Ifopo had been identified as suspects in a September 2008 robbery. Hernandez stated that he did not rob anyone. Hernandez stated that he and Ifopo had once smoked marijuana at a park near the San Diego Zoo. He further claimed that Ifopo had shown him a black replica

handgun. Hernandez believed it to be a pellet gun. He told Detective Garcia that "I don't remember robbing anybody."

Ifopo testified that on the night of the robberies, he was "doing a lot of drinking and getting high" in Balboa Park. However, he denied he was with Hernandez that night. Ifopo further testified that he was with Hernandez in a park near downtown on a different occasion when he (Ifopo) had a real gun. Moreover, Ifopo admitted that he walked up to "[t]wo Mexicans" pretending to have a gun and told them to give him "everything." He stated that he once had a real gun but has since sold it. He testified that he was "positive" he did not have a gun on the night of the robberies.

## DISCUSSION

As correctly outlined in the Report and Recommendation, federal habeas relief may only be granted when state court proceedings: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court's application of federal law "must be objectively unreasonable, not just incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 65, 76 (2003).

Hernandez raises two objections to the Report and Recommendation: (1) his un-*Mirandized* statements should not have been admitted as evidence in trial; (2) his right against compelled self-incrimination was violated.

### I. UN-*MIRANDIZED* STATEMENTS

Hernandez contends that his conviction is invalid because it was based on un-*Mirandized* statements that were unconstitutionally admitted as evidence in trial. Hernandez alleges that his Fifth Amendment rights were violated when he was interviewed by Detective Garcia because he was not read *Miranda* warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

"[T]he prosecution may not use statements, whether exculpatory or inculpatory,

stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* In *California v. Beheler*, the Supreme Court clarified the term "custodial." 463 U.S. 1121, 1125 (1983). An individual is in custody when there is a "'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Beheler*, 463 U.S. at 1125).

The mere fact that a person is detained in a jail facility does not necessarily make questioning of that person a custodial interrogation for purposes of *Miranda*. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012). The totality of the circumstances of each case must be evaluated. *Id.* at 1189. To determine if Hernandez was in custody, the court must make two inquires. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). First, the court must determine what the factual circumstances of the interrogation were. *Id.* Under 28 U.S.C. § 2254(d), factual inquiries of the state court are entitled to a presumption of correctness. *Id.* Second, the court must determine whether a reasonable person would have felt that he or she was able to terminate the interrogation and leave. *Id.* at 112-113.

Here, Hernandez's statements were made while he was detained in jail for a parole violation. (Lodgment No. 7, at 7.) The language used to summon Hernandez over the loud speaker was nonthreatening: "Hernandez, you have a professional visit." (*Id.* at 20.) When Hernandez was asked on cross examination if he went to the visiting room "freely," he responded "yes." (*Id.*) When he arrived at the room, Garcia was dressed in civilian clothing. (*Id.*) He showed Hernandez his badge and explained he was investigating a robbery. (*Id.*) However, Garcia never suggested that Hernandez had to speak. (*Id.*) Additionally, Garcia never made any type of threats. (*Id.*) The language and physical appearance of Garcia were not coercive.

The physical surroundings of the questioning were equally not coercive. The questioning took place in the visiting room. "[A]n interview room where attorneys and doctors visit to consult inmates is as close to neutral territory as is available in the detention facility." *People v. Macklem*, 149 Cal. App. 4th 674, 696 (4th Dist. 2007). Additionally, Hernandez testified that he and the visitor were sitting on opposite sides of the bars in the visiting room. (Lodgment No. 7, at 21.) Hernandez acknowledged that, although the door behind him was locked, if he did not want to talk or continue to talk to the visitor, he could push a buzzer to let the prison guards know he wanted to leave. (*Id.* at 11.) Hernandez further acknowledged that he had gone into the visiting room without handcuffs and remained uncuffed during the entire interview. (*Id.*) When Hernandez wanted to terminate the interview, he simply rang the buzzer and waited until the guard opened the door to bring him back to the general prison population. The total time that elapsed from when he pushed the buzzer until the guard opened the door was 30 seconds to one minute. (*Id.* at 9.) Based on the circumstances, a reasonable person would have understood that he or she was free to stop the questioning and terminate the interview.

Accordingly, Hernandez's claim that the interview was a custodial interrogation is not credible in light of the record.

## II. RIGHT AGAINST SELF-INCRIMINATION

For the first time, Hernandez claims that his Fifth Amendment right to be free from compelled self-incrimination was violated. A district court may decline to hear new arguments not raised before the magistrate judge. *See Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

Hernandez did not raise this issue in his Petition. In addition, Hernandez simply states a legal conclusion. He fails to provide any facts to support his claim. Additionally, after reviewing the record, there is no evidence that any court has compelled him to be a witness against himself. Accordingly, Hernandez's claim has

no merit.

Hernandez's remaining arguments are unconvincing.

### III. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 foll. 28 U.S.C. § 2254. A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a petitioner's claims have been denied on their merits, as here, a petitioner can meet the threshold "substantial showing of the denial of a constitutional right" by determining that "the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (internal quotation marks and alteration omitted). The Court **DENIES** a certificate of appealability because the issues are not debatable among jurists of reason, the Court could not resolve the issues in a different manner, and there are no questions adequate to deserve encouragement.

### CONCLUSION

After a de novo review, the Court fully **ADOPTS** Judge Bartick's Report and Recommendation. The Petition is **DENIED**. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: October  5 , 2013

HON. ROGER T. BENITEZ
United States District Judge